1 | XAVIER BECERRA
Attorney General of California
2 | EDWARD H. OCHOA
Supervising Deputy Attorney General
3 | JOHN W. EVERETT
Deputy Attorney General
4 | Cal. Bar No. 259481
  600 West Broadway, Suite 1800
5 | San Diego, CA 92101
  P.O. Box 85266
6 | San Diego, CA 92186-5266
  Telephone: (619) 738-9305
7 | Fax: (619) 645-2271
  E-mail: John.Everett@doj.ca.gov
8 | *Attorneys for Plaintiffs California Department of
Toxic Substances Control and the Toxic Substances*
9 | *Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and THE TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE FHL FINANCIAL GROUP, a California corporation,**<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR RECOVERY OF RESPONSE COSTS and DECLARATORY RELIEF**<br><br>**(Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9607(a), 9613(b) and (g)(2), and 28 U.S.C. § 2201, and alternative, supplemental state law claims** |

Plaintiffs, the California Department of Toxic Substances Control (the "Department") and the Toxic Substances Control Account (collectively, "Plaintiffs"), allege as follows:

**STATEMENT OF THE ACTION**

1. Plaintiffs make a claim against Defendant The FHL Financial Group, a California corporation, under section 107(a) of the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for the recovery of response costs and interest thereon that Plaintiffs have incurred in connection with releases and threatened releases of hazardous substances, including (but not limited to) perchloroethylene ("PCE"), trichloroethylene ("TCE"), carbon tetrachloride ("$CCl_4$"), benzene, xylenes, acetone, and naphthalene, at or from the properties at: 7047 and 7051 North Figueroa Street, City of Los Angeles, in the County of Los Angeles, California, identified by Assessor's Parcel Number ("APN") 5480-012-016 ("the Property"). The Property and the extent of the hazardous substances contamination that is or has been present at, or has extended from, the Property, are referred to herein as "the Site."

2. Plaintiffs further make a claim, under 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that Defendant is jointly and severally liable to Plaintiffs for the response costs they have incurred and will incur in responding to releases and threatened releases of hazardous substances at or from the Site.

3. Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs make an alternative claim for the recovery of response costs and interest thereon pursuant to California's Hazardous Substances Account Act (HSAA), California Health and Safety Code section 25300 et seq.

4. Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs also make an alternative claim for a declaratory judgment that Defendant is liable to Plaintiffs, pursuant to section 25363 of the HSAA, for the response costs they have incurred and will incur in responding to releases and threatened releases of hazardous substances at or from the Site.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1367, and section 113(b) of CERCLA, 42 U.S.C. § 9613(b). This Court has jurisdiction over the subject matter of the claims made under state law in this action

under 28 U.S.C. §§ 1367(a) (supplemental jurisdiction) and 2201 because the claims under state law arise out of the same common nucleus of facts as the federal claims set forth in this Complaint and the state and federal law claims are so closely-related that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the release or threatened release of hazardous substances that gives rise to these claims occurred in this judicial district.

**PLAINTIFFS**

7. The Department is a public agency of the State of California, organized and existing under California Health and Safety Code section 58000 et seq. Pursuant to California Health and Safety Code section 25300 et seq., the Department has authority under state law for determining whether there has been a release and/or threatened release of a hazardous substance into the environment and for responding to releases and/or threatened releases of a hazardous substance into the environment.

8. The Toxic Substances Control Account, or "State Account," is an account within the State of California General Fund, established pursuant to section 25173.6 of the California Health and Safety Code. Cal. Health & Saf. Code, §§ 25324, 25173.6. The Director of the Department administers the State Account. The State Account may sue in its own name (Cal. Health & Saf. Code, § 25331), and shall be a party in any action for recovery of costs or expenditures incurred from the state account pursuant to the Hazardous Substances Account Act. Cal. Health & Saf. Code, § 25361(a).

**DEFENDANT**

9. Defendant The FHL Financial Group ("FHL") is a California corporation. The Department is informed and believes, and thereon alleges, that FHL has its principal place of business at 23422 Mill Creek Drive, Suite 120,

Laguna Hills, California 92654.  FHL acquired ownership of the Site via foreclosure in January 2008, after the previous property owner, Lowell Industries, Inc., failed to repay a loan secured through a deed of trust.  FHL is the current "owner" of the Site, as that term is used in CERCLA section 107(a)(1), 42 U.S.C. § 9607(a)(1), and as defined in CERCLA section 101(20)(A), 42 U.S.C. § 9601(20)(A).

## GENERAL ALLEGATIONS

10. From roughly the 1930s until the 1970s, Plaintiffs are informed and believe that Spence Cleaners operated at the Site as a dry cleaner, and that its operations resulted in the release of hazardous substances into the soil and groundwater.  The Site is a "facility," and there have been "releases of hazardous substances" at the Site.  42 U.S.C. § 9607(a).

11. In 2005, the City of Los Angeles identified the Site for nuisance conditions and filed a Notice of Abatement.  That same year, Avalon Environmental Consultants ("Avalon") performed two Limited Phase II Subsurface Site Assessments at the Site to confirm the presence of hazardous substances.  Avalon detected PCE in soil and groundwater samples.

12. In or around 2006, the Department allocated state funds for the stabilization and remediation of the Site and began performing response activities.

13. In July 2006, the Department issued an Imminent and Substantial Endangerment Determination for the Site, finding that PCE concentrations at the Site posed a risk to human health and the environment.

14. In February 2007, the Department issued an Imminent and Substantial Endangerment Order (I/SE Order) and a Remedial Action Order for the Site.  The Department concluded that the actual or threatened release of PCE, TCE, and $CCL_4$ at the Site presented an imminent and substantial endangerment to public health and welfare and to the environment, and directed former property owners Edgar B. Spence III, Diana C. Hyland, and Tom Salgado (the principal of Lowell Industries,

Inc.) to undertake necessary response actions to protect the environment and public health.

15. In May 2007, the Department caused its consultant, Environmental Applications, to complete a Soil Vapor Investigation at the Site. A total of 23 different potential chemicals of concern were found in soil vapor samples, including PCE, TCE, $CCl_4$, benzene, xylenes, acetone, and naphthalene. The highest PCE concentrations were centered in the northeast area of the Site, near where dry cleaning operations formerly occurred. Higher levels of TCE and $CCl_4$ were also found in this area. PCE was identified as a chemical of potential concern in the soil, and PCE and TCE were identified as chemicals of potential concern in the perched and water table groundwater.

16. Buildings at the Site were demolished in May 2007.

17. The Department prepared a Time Critical Removal Action Workplan (TCRAW) in April 2008, wherein it proposed to remove volatile organic compound (VOC) impacted soil vapors from approximately 23,000 square feet of soil at the Site.

18. To implement the TCRAW, the Department caused its consultant, URS Corporation (URS), to prepare a Remedial Design and Implementation Plan (RDIP) in July 2008. Therein, URS recommended that the Department proceed with execution of the TCRAW by extracting soil vapor, while continuing to monitor soil vapor and groundwater for chemicals of concern.

19. URS amended the RDIP in June 2009 and again in November 2010 to, respectively, add a "dual-phase extraction" component to the soil vapor extraction system and to remove contaminated soil at the Site.

20. In January 2011, URS prepared a Removal Action Completion Report documenting the activities undertaken pursuant to the TCRAW. Among other things, the Department: removed approximately 250 pounds of PCE from soil vapor and approximately 600 tons of PCE-impacted soil; backfilled trenches and

auger holes with cement slurry (to reduce contaminant migration); placed an asphalt "cap" on the surface; monitored soil vapor levels of PCE; and took confirmation samples from excavated soil areas.

21. In 2012, the Department completed a Human Health Risk Assessment for the Site. Exposure pathways with health risk estimates higher than accepted standards were identified for residential "receptors," including vapor intrusion from soil and gas, vapor intrusion from groundwater, and groundwater use through tap water. These same exposure pathways were of concern for commercial workers. For construction workers, exposure pathways of concern included vapor intrusion into trench air from soil gas and groundwater exposure in trenches.

22. Because PCE concentrations in the soil were increasing at certain sampling locations, the Department caused URS to perform additional soil vapor extraction at the Site in 2014.

23. The Department has continued to take soil vapor samples and monitor groundwater at the Site. PCE soil vapor levels have been stable in recent years. One groundwater well continues to demonstrate relatively high PCE concentrations, however, and concentrations of PCE in that same well have increased for five consecutive years.

24. The Department is in the process of developing a five-year workplan for the Site. The Department also expects to prepare and adopt a Final Remedial Action Plan for the Site, wherein the Department will analyze and select a final remedy for the Site. The Department's goal is to certify the Site as needing no further action by the year 2024.

25. The Department has incurred, and expects to continue to incur, costs of "response," as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions related to the Site. The response actions include, but are not limited to, the following activities:

    a. Reviewing sampling and analysis;

      b.  Performing inspections and preparing reports;

      c.  Reviewing workplans for investigation and remediation;

      d.  Conducting Site visits and overseeing field work;

      e.  Meeting with the potentially responsible part(ies);

      f.  Complying with the California Environmental Quality Act; and

      g.  Preparing decision documents regarding site cleanup and monitoring and implementing additional response actions concerning the Site.

26. Plaintiffs' outstanding response costs related to the Site as of June 1, 2019 totaled an amount in excess of $2,290,867.47, exclusive of pre-judgment interest.  Since that date, Plaintiffs have incurred additional response costs and will continue to incur response costs in the future.

27. The Site remains contaminated with hazardous substances, and releases or threatened releases of hazardous substances from the Site into the environment may continue to occur.

28. Plaintiffs are informed and believe that FHL has made no effort to market the Property for sale since approximately June 2008.  FHL stated in correspondence with the Department that it attempted to market the Property from February 2008 through June 2008.

29. Plaintiffs are informed and believe that the Property has increased in value since FHL acquired it, and will increase significantly more after the Department completes response activities at the Site and certifies the Site as requiring no further action.  Accordingly, Defendant FHL stands to reap substantial financial gains from continuing to hold the Property as an investment, as it has done for more than a decade.  Plaintiffs are also informed and believe that FHL continues to profit from the Site by leasing space for advertising billboards.

30. The Department sent a payment demand for response costs to FHL on June 7, 2016.  FHL refused, and continues to refuse, to pay any portion of Plaintiffs' response costs.

COMPLAINT FOR RECOVERY OF CERCLA RESPONSE COSTS

**FIRST CLAIM FOR RELIEF**

(Claim for Recovery of Response Costs

Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a))

31. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 30 as though fully set forth herein.

32. The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and there have been releases of hazardous substances from the facility. 42 U.S.C. § 9607(a).

33. FHL is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

34. Plaintiffs are the "State" for purposes of recovery of response costs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Pursuant to that section, Plaintiffs may also recover interest on response costs incurred.

35. FHL is jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the response costs that Plaintiffs have incurred, and will incur, in response to the release or threatened release of hazardous substances at or from the Site.

36. FHL is an "owner" of the Site, as that term is used in sections 107(a)(1), 42 U.S.C. §§ 9607(a)(1). PCE is a hazardous substance within the definition of section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

37. The soil at the Site is contaminated with PCE, among other hazardous substances, and this contamination constitutes the release and threatened releases of hazardous substances into the environment within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

38. The groundwater at the Site is contaminated with PCE, among other hazardous substances, and this contamination constitutes the release and threatened release of hazardous substances into the environment within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

39. Plaintiffs have responded to the release or threatened release of hazardous substances to the environment at the Site, and they have incurred response costs, including the costs of oversight and enforcement costs, within the meaning of section 101(25) of CERCLA, 42 U.S.C. §9601(25).

40. Plaintiffs have incurred costs in responding to the release or threatened release of hazardous substances at or from the Site in a manner that satisfies the requirements of section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), in that the costs arose from activities that were not inconsistent with the applicable requirements of the National Contingency Plan, 40 C.F.R. Part 300.

## SECOND CLAIM FOR RELIEF
(Claim for Declaratory Relief Pursuant to
Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2))

41. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiffs have incurred and expect to continue to incur response costs related to the release and threatened release of hazardous substances at and from the Site.

43. Under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that FHL is jointly and severally liable in any subsequent action or actions by Plaintiffs to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site.

## THIRD CLAIM FOR RELIEF
(In the Alternative, for Recovery of Response Costs Pursuant to the HSAA,
Cal. Health & Saf. Code, §§ 25360-61.)

44. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 43 as though fully set forth herein.

45. Pursuant to the section 25360 of the HSAA, the Department may bring an action against responsible parties in order to recover all costs of removal and remedial action incurred in response to a release or threatened release of a hazardous substance. The State Account may sue in its own name, and it shall be a party to any action for recovery of costs or expenditures incurred from the state account pursuant to the Hazardous Substances Account Act. Cal. Health & Saf. Code, §§ 25331, 25361(a).

46. PCE is a "hazardous substance" as defined by section 25316 of the California Health & Safety Code.

47. The presence of this and other hazardous substances at the Site constitutes a "release" and threatened releases of hazardous substances as defined by Health and Safety Code section 25320.

48. Plaintiffs have incurred costs associated with "response actions," as defined in section 25323.3 of the Health & Safety Code, in abating the releases or threatened releases of hazardous substances at the Site.

49. FHL is a liable "person" as defined in section 25319 of the Health & Safety Code.

50. FHL is liable to Plaintiffs under sections 25360 and 25361 of the California Health and Safety Code for any costs incurred by Plaintiffs. The amount of any costs which may be recovered may include interest at the rate provided by law.

**FOURTH CLAIM FOR RELIEF**

(In the Alternative, for Declaratory Relief

Pursuant to the HSAA, Cal. Health & Saf. Code, §§ 25360, 25363)

51. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiffs have incurred and expect to continue to incur response costs related to the release and threatened release of hazardous substances at and from the Site.

53. Pursuant to California Hazardous Substance Control Account Act, sections 25360 and 25363, Plaintiffs are entitled to a declaratory judgment that FHL is liable in any subsequent action or actions by Plaintiffs to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. For a judgment that FHL is jointly and severally liable without regard to fault to Plaintiffs under section 107(a) of CERCLA for all response costs incurred to date by Plaintiffs as a result of the release and threatened release of hazardous substances from the Site, in an amount to be proven at trial;

B. For interest on the above sums as provided under section 107(a) of CERCLA;

C. For a declaratory judgment, pursuant to 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, that FHL is jointly and severally liable without regard to fault to Plaintiffs for all future response costs incurred by Plaintiffs as a result of the release and threatened release of hazardous substances at and from the Site;

D. In the alternative, for a judgment that FHL is liable without regard to fault to Plaintiffs under sections 25360 and 25363 of the HSAA for all response costs incurred to date by Plaintiffs as a result of the release and threatened release of hazardous substances from the Site, in an amount to be proven at trial;

E. In the alternative, for interest on the above sums as provided for under section 25360.1 of the HSAA;

F. In the alternative, for a declaratory judgment, pursuant to sections 25360 and 25363 of the HSAA that FHL is strictly liable to Plaintiffs for all future

response costs incurred by Plaintiffs as a result of the release and threatened release of hazardous substances at and from the Site;

    G.    For enforcement costs, including costs of this suit and attorneys' fees; and

    H.    For all other relief the Court deems just and appropriate.

Dated: December 9, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General

/s/ John W. Everett
JOHN W. EVERETT
Deputy Attorney General
*Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account*

SD2018602865
82246843.docx